Albert Crisfield, Appellee, v. New Staunton Coal Company, Appellant.

MASTER AND SERVANT—*when defense of fellow-servants will not bar recovery.* Held, under the evidence in this case, that the defense of fellow-servants would not operate to defeat a recovery.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

WISE, MCNULTY & KEEFE, for appellant.

C. H. BURTON, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought suit to recover damages for severe personal injuries, received by him while in the employ of appellant in its mine.

There were two counts in the declaration, the first charging that appellee was employed to run an electric motor in appellant's mine, hauling cars along certain tracks therein; that appellant carelessly and negligently permitted a certain vicious mule to be loose in the mine; that while appellee with due care for his own safety, was driving and operating said motor, said vicious mule ran down the entry towards appellee, jumped into the motor and injured him. The second, that appellant knew, or by the exercise of due diligence could have known the mule to be vicious and dangerous to the men employed in the mine, when it was loose therein; that the mule was loose without the knowledge or fault of appellee and came running down the entry and viciously jumped into the motor and injured appellee.

There was a plea of not guilty and the trial resulted in a verdict and judgment in favor of appellee for $5000.

Appellant complains that the verdict is against the weight of the evidence, also that the trial court erred in its rulings in regard to the evidence and in instructing the jury.

The proofs show that on October 19, 1907, appellee was employed in appellant's mine, it being his duty to

run an electric motor, engaged in hauling coal cars. The motor was propelled by an electric current, carried on a wire running along the entry near the track. Cars were hauled by mules from the different rooms, where the coal was mined, to partings or sidetracks, and it was appellee's business to get these loaded cars at the several partings, haul them by the motor to the bottom of the shaft and return empty cars to the partings where they would be taken back to the working places by the mules. The mules in the mines were driven without lines, although there were lines on the harness, and they were taught to stand and wait at the partings for miners to start them. Among others there was a grey mule, called Raleigh, which when loose would run and kick and run over any one in his way. One witness testified that if the mule saw the cable when he was loose, he would be just crazy and run out towards the bottom and kick and men had to get out of his way many times. He got away from his driver on more than one occasion and when loose would not let the driver catch him. Thomas Moss, the mine manager of appellant, was notified that the mule was dangerous and warned that it would injure some one if permitted to be loose in the mine. This notice was given to Moss by several miners and by appellee himself, a week or so before the injury. On the morning of the day named, the boss driver told Ramsey, another driver, to take Raleigh and another mule, named Brigham, to the third south entry. Ramsey, who had never handled Raleigh before, started the mules, walking along behind them. Shortly after he started the mules began to run, and the lines being tied up on the harness, he had no means of stopping them. He soon lost track of them and not finding them in several entries where he went, returned to his own work. The mules left to themselves, went to a parting on the north side of the mine, called the first north parting, and were standing there, when another

driver, Bertinola, came up with a load. As he got near
he shouted to the mule he was driving, which had the
effect of starting Raleigh and his companion. They
started down the entry and one of them coming in con-
tact with the trolley wire, they commenced to run. As
appellee was turning from the main east into the first
north entry, riding on the front end of the motor,
which was barely moving and was equipped with an
electric headlight, throwing a light twenty-five feet in
advance, the mule Raleigh coming down the entry at a
rapid gait, jumped on the motor, which was only some
two feet high, striking appellee with his front feet, and
as it appeared, fell upon him. Appellee's skull was
fractured and he was in other respects most painfully
injured. He was unconscious for several weeks, spent
a large amount of money for physicians' services and
is permanently injured in a number of ways.

Appellant insists that the proximate causes of the
injury were the acts of the driver Ramsey in per-
mitting the mule Raleigh to get away from him and
go to the wrong parting, and of the driver Bertinola
in negligently driving the mule away from the parting
and making no attempt to stop him; and that the two
drivers were fellow-servants of appellee. Even if it
were admitted that the acts of the two drivers were
negligent and contributed to bring about the injury,
which is contested by appellee, such acts could not af-
fect appellee's right of recovery in this action. The
injury could not have occurred had not appellant per-
mitted the dangerous mule Raleigh to remain in its
mine. The vicious habits and dangerous character of
the animal were known to appellant and the mine man-
ager warned that if permitted to remain he would in-
jure some one, but in spite of warnings the mule was
not only permitted to remain in the mine but no steps
were taken to secure him by the use of lines or other-
wise, so that he could not break away from his driver.
It was a natural and likely consequence of the reten-
tion of the mule in the mine without providing means

to control him that some person would be injured. The fact, if it were shown to be a fact, that the negligence of fellow-servants contributed with that of the appellant to causing the injury, should not prevent a recovery if appellee was otherwise entitled thereto. Klofski v. R. R. Supply Co., 235 Ill. 146; Kennedy v. Swift & Co., 234 id. 606; Pullman Palace Car Co. v. Laack, 143 id. 242. It follows from what we have said, that in our opinion the facts elicited upon the trial of the case, warranted a verdict in favor of appellee.

It is objected by appellant that the court permitted appellee to prove the mine manager was notified of what the mule was accustomed to do when loose in the mine, on the ground that the questions did not cover the conditions surrounding the accident, and that it would be immaterial as to what the mule might have done at other times, unless the conditions were similar to those surrounding the occasion in question. This objection is not well taken, as it was proper to prove under the declaration the general vicious and dangerous character of the mule, when loose in the mine, and that appellant's manager had been notified of the same, as tending to show that appellant was guilty of negligence in retaining the mule in the mine.

Complaint is also made by appellant that it was not permitted to show that one of its own witnesses had made a statement out of court which differed from that made by him in court, concerning the question whether one of the mules started by Bertinola came in contact with the live wire, the court holding that it could nót be permitted to impeach its own witness. The fact to which the interrogatory was directed, was not of great importance, the matter was to a large extent within the discretion of the court and appellant made proof by another witness, which is not contested, that one of the mules hit the live wire.

Appellant's refused instruction No. 11 is based upon the theory that there was evidence tending to show

that, while the mule in question was standing at a parting, a driver came along and without any right and outside of his employment, hit the mule and caused it to swerve and come in contact with an electric motor, whereby the mule was frightened and started to run away, when in fact there was no evidence tending to prove that any driver hit either the mule Raleigh or his companion, while they were standing at the parting. The other instructions refused for appellant, appear to us to be equally subject to criticism. Appellee through no fault of his received painful and permanent injuries in appellant's mine. The damages recovered are not claimed by appellant to be excessive. There was ample evidence to sustain the charges of the declaration and the trial was free from any substantial error. Under such conditions the judgment of the court below should and will be affirmed.

*Affirmed.*